Alexander (Zander) Blewett III, MT Bar No.138
Drew Blewett, MT Bar No.9106
Hoyt & Blewett, PLLC
501 Second Ave N.
Great Falls, MT 59401
Telephone: (406) 761-1960
Email: zblewett@hoytandblewett.com
Email: dblewett@hoytandblewett.com
www.hoytblewett.com

Jory D. Lange, Jr., (*Pro Hac Vice pending*)
THE LANGE LAW FIRM, PLLC
6300 West Loop South, Suite 350
Houston, TX 77401
Telephone: (833) 330-3663
Facsimile: (833) 393-3663
Email: jory@jorylange.com
MakeFoodSafe.com

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT
# DISTRICT OF MONTANA

* * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| TEISCHA BENSON, | ) |
|  Plaintiff, | ) Case No. CV-20-70-GF-BMM-JTJ |
| v. | ) |
| THOMSON INTERNATIONAL, INC., | ) **COMPLAINT AND DEMAND FOR JURY TRIAL** |
|  Defendant. | ) |

* * * * * * * * * * * * * * * * * * * * * * * * *

Plaintiff, TEISCHA BENSON, by and through her attorneys of record, The Lange Law Firm, PLLC and Hoyt & Blewett, PLLC, and alleges as follows:

## I. PARTIES

1. At all times relevant hereto, Plaintiff was a resident of Great Falls, Montana and a citizen of the State of Montana.

2. Thomson International, Inc. ("Thomson International") is a corporation organized and existing under the laws of the State of California with its principal place of business in California. At all times relevant hereto and upon information and belief, Thomson International is a manufacturer, distributor and seller of agricultural products in the United States, including onions. Thomson International distributes its food products, including onions, to retail locations in all fifty U.S. states, including Montana. Upon information and belief, Thomson International's principal place of business is located at 9852 Buena Vista Blvd., Bakersfield, California 93307.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because Defendant has certain minimum contacts with the State of Montana such

that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

4. Venue in the United States District Court for the District of Montana is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes of action occurred in this judicial district, and because Defendant Thomson International was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

### III. FACTS

**A. The 2020 Salmonella Outbreak Caused by Onions Manufactured and/or Distributed by Thomson International, Inc.**

5. *On* July 21, 2020, the Centers for Disease Control and Prevention (CDC) announced that CDC PulseNet identified an outbreak of 13 Salmonella Newport infections in three states. Since being identified, the outbreak has rapidly grown to a total of 396 infections in 34 states.

6. The breakdown per state as of July 31, 2020 includes: Arkansas (6), Arizona (14), California (49), Colorado (10), Florida (3), Idaho (5), Illinois (10), Indiana (2), Iowa (15), Kansas (1), Kentucky (1), Maine (4), Maryland (1), Michigan (23), Minnesota (10), Missouri (6), Montana (33), Nebraska (5), Nevada (5), New York (4), North Carolina (3), North Dakota (5), Ohio (7), Oregon (71),

3

Pennsylvania (2), South Carolina (1), South Dakota (11), Tennessee (5), Texas (1), Utah (61), Virginia (4), Washington (2), Wisconsin (5), and Wyoming (11).

7. As of the date of this Complaint, of the 236 ill people with information available, 59 hospitalizations have been reported. No deaths have been reported.

8. Illnesses started on dates ranging from June 19, 2020, to July 12, 2020.

9. Ill people range in age from less than 1 to 102 years, with a median age of 39. Fifty-two percent of ill people are female. Some illnesses might not yet be reported due to the time it takes between when a person becomes ill and when the illness is reported. This takes an average of 2 to 4 weeks.

10. In its July 31, 2020 announcement, the CDC stated that Epidemiologic and preliminary traceback evidence indicates that red onions are the likely source of this outbreak. The traceback information collected identified Thomson International, Inc. of Bakersfield, CA as a likely source of red onions in this outbreak.

11. On the same day as the CDC announcement, Thomson International issued a recall of all varieties of onions that could have come in contact with potentially contaminated red onions, due to the risk of cross-contamination. This

recall included red, white, yellow, and sweet onions from Thomson International, Inc.

12. The FDA's investigation is ongoing to determine if products went to additional stores or states.

13. The FDA is currently working with state partners to trace back the onions to identify the source of the pathogen, to determine the full distribution of the onions, and to learn more about how the contamination occurred.

B. *Salmonella.*

14. The term *Salmonella* refers to a group or family of bacteria that cause illness in humans. *Salmonella* lives in the intestinal tracts of humans and other animals, including poultry. But the type of *Salmonella* that may not make poultry sick can make humans very ill.

15. Currently, the Centers for Disease Control and Prevention (CDC) recognize two species, which are divided into six subspecies. These subspecies are divided into over 50 serogroups based on somatic (O) antigens present.

16. The most common *Salmonella* serogroups are A, B, C, D, E, F, and G. Serogroups are further divided into over 2,500 serotypes. *Salmonella* serotypes are typically identified through a series of tests of antigenic formulas listed in a document called the Kauffmann-White Scheme published by the World Health Organization Collaborating Centre for Reference and Research on *Salmonella*.

17. *Salmonella* bacteria are typically transmitted to humans by food or water contaminated with feces. Such foods usually look and smell normal. Nothing about the products look, taste, or smell would warn a consumer that it was contaminated with *Salmonella* bacteria.

18. After exposure, *Salmonella* bacteria travel to the lumen of the small intestines, then penetrate the epithelium, multiply, and enter the blood. This infection process—also referred to as the incubation period—usually takes 6 to 72 hours for the onset of symptoms. According to the CDC, as little as one cell of *Salmonella* bacteria can cause infection.

19. The acute symptoms of *Salmonella* gastroenteritis (or Salmonellosis) include nausea, vomiting, diarrhea, fever, abdominal cramping and/or stomach pain, headache, dysuria, muscle pain, fatigue, and dehydration.

20. Doctors typically treat the symptoms of Salmonellosis with anti-nausea or anti-diarrhea medications. Some physicians may prescribe antibiotics. Many severe cases may require intravenous fluids for treatment of dehydration, usually in an emergency room or urgent-care setting.

21. *Salmonella* infections may also cause long-term side-effects, such as Reactive Arthritis (RA), Septicemia, Bacteremia, chronic gallbladder infection, and Irritable Bowel Syndrome (IBS) can develop, requiring extensive ongoing medical treatment and care. The elderly, infants, and those with compromised

immune systems are more likely to experience severe illness and long-term complications from exposure to *Salmonella* bacteria. *Salmonella* infections can be fatal.

C. **Teischa Benson *Salmonella* Infection Following Her Exposure to *Salmonella*-Contaminated Onions Manufactured and/or Distributed by Thomson International, Inc.**

22. In July of 2020, Teischa ate raw onions.

23. Within a day or so, Teischa fell ill with fever and chills. Then, severe diarrhea began. Teischa then went to the emergency room, where she spent an entire day and night.

24. On or about August 1, 2020, Great Falls Health Department informed Teischa that her Salmonella infection was from onions linked to the multi-state outbreak linked to onions.

25. Teischa continues to recover and face uncertain future medical complications.

## IV. CAUSES OF ACTION

### COUNT I
### STRICT PRODUCT LIABILITY

26. Plaintiff restates and realleges all allegations set forth in ¶¶ 1-25 above.

27. Defendant manufactured, distributed, and/or sold the adulterated food product that injured Plaintiff. The food was defective in that it was contaminated with *Salmonella* bacteria.

28. Defendant manufactured, distributed, and/or sold food products, and in particular, onions for sale to the public.

29. The adulterated food product that Defendant manufactured, distributed, and/or sold was, at the time it left Defendant's control, defective and unreasonably dangerous for its ordinary and expected use because it contained Salmonella, a deadly pathogen.

30. Adulterated food products that are contaminated with *Salmonella* are unsafe and thus defective when used in a reasonably foreseeable manner—*i.e.*, eating it.

31. *Salmonella*-contaminated onions and food products are unfit for human consumption, and unreasonably dangerous to an extent beyond that contemplated by the ordinary consumer.

32. The adulterated food products that Plaintiff purchased and consumed from Defendant were contaminated with *Salmonella* and were therefore, as a result, defective and unreasonably dangerous.

33. The adulterated food products that defendant manufactured, distributed, and/or sold was delivered to Plaintiff without any change in its

defective condition. The adulterated food product that defendant manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by Plaintiff.

34. The food products Plaintiff purchased and consumed were contaminated with *Salmonella* when they left Defendant's control.

35. Plaintiff's consumption of the contaminated onions caused her to become infected with *Salmonella* and suffer injury, as a direct and proximate result.

36. Defendant owed a duty of care to Plaintiff to design, manufacture, and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. Defendant breached this duty.

37. Defendant owned a duty of care to Plaintiff to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. Defendant breached this duty.

38. Plaintiff suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that defendant manufactured, distributed, and/or sold.

39. Defendant is strictly liable to Plaintiff for the harm proximately caused by the manufacture, distribution, and sale of an unsafe and defective onions products.

## COUNT II
## BREACH OF WARRANTY

40. Plaintiff restates and realleges all allegations set forth in ¶¶ 1-39 above.

41. By offering onions for sale to the general public, Defendant impliedly warranted that such onions were safe to eat, that they were not adulterated with a deadly pathogen, and that the onions had been safely prepared under sanitary conditions.

42. Defendant breached the implied warranties with regard to the food and drink they manufactured, distributed, and/or sold to Plaintiff. Defendant is liable to Plaintiff for breaching express and implied warranties that it made regarding the adulterated product that Plaintiff purchased. These express and implied warranties included the implied warranties of merchantability and/or fitness for a particular use. Specifically, Defendant expressly warranted, through its sale of food to the public and by the statements and conduct of its employees and agents, that the food it prepared and sold was fit for human consumption and not otherwise adulterated or injurious to health.

43.     Plaintiff alleges that the Salmonella-contaminated food that Defendant sold to Plaintiff would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

44.     Plaintiff alleges that the Salmonella-contaminated food that Defendant sold to Plaintiff was not fit for the uses and purposes intended, *i.e.* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

45.     Plaintiff's injuries proximately and directly resulted from Defendant's breach of implied warranties, and Plaintiff is thus entitled to recover for all actual, consequential, and incidental damages that flow directly and in a foreseeable fashion from these breaches.

## COUNT III
## NEGLIGENCE *PER SE*

46.     Plaintiff restates and realleges all allegations set forth in ¶¶ 1-45 above.

47.     Defendant had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of its food product, including, but not limited to, the requirements of the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 et seq. and the Montana adulterated food statutes (MCA § 50-31-202 *et seq.*).

48. Defendant failed to comply with the provisions of the health and safety acts identified above, and, as a result, was negligent *per se* in its manufacture, production, distribution, and/or sale of food adulterated with *Salmonella*, a deadly pathogen.

49. As a direct and proximate result of conduct by Defendant that was negligent *per se*, Plaintiff sustained injuries and damages.

## COUNT IV
## NEGLIGENCE

50. Plaintiff restates and realleges all allegations set forth in ¶¶ 1-49 above.

51. Defendant designed, manufactured, distributed, and/or sold food products, including specifically onions, that were contaminated with *Salmonella*, a deadly pathogen. The onions, as a result of contamination, were unfit for human consumption, thus defective, and were not reasonably safe as designed, constructed, manufactured, distributed, and sold.

52. Defendant owed a duty to all persons who consumed their products to manufacture, distribute, and sell onions that were safe to eat, that were not adulterated with deadly pathogens, like *Salmonella*, and that were not in violation of applicable food and safety regulations.

53. Defendant owed a duty to all persons who consumed their products a duty to maintain their premises in a sanitary and safe condition so that the onions

they manufactured, distributed, and sold would not be contaminated with a deadly pathogen, like *Salmonella.*

54. Defendant breached the duties owed to their customers by committing the following acts and omissions of negligence:

   a. Failed to adequately maintain or monitor the sanitary conditions of their products, premises, and employees;

   b. Failed to properly operate their facilities in a safe, clean, and sanitary manner;

   c. Failed to apply their food safety policies and procedures to ensure the safety and sanitary conditions of their food products, premises, and employees;

   d. Failed to prevent the transmission of *Salmonella* to consumers of their onions;

   e. Failed to properly train their employees and agents how to prevent the transmission of *Salmonella* on their premises, or in their food products;

   f. Failed to properly supervise their employees and agents to prevent the transmission of *Salmonella* on their premises, or in their food products.

55. Defendant had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of their food products.

56. Defendant owed a duty to Plaintiff to use reasonable care in the manufacture, distribution, and sale of their food products, to prevent contamination with Salmonella - the observance of which duty would have prevented or

13

eliminated the risk that the defendant's food products would become contaminated with *Salmonella* or any other dangerous pathogen. Defendant breached this duty.

57.   Plaintiff is among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

58.   Plaintiff's injuries proximately and directly resulted from Defendant's negligence.

## V. DAMAGES

59.   Plaintiff restates and realleges all allegations set forth in ¶¶ 1-58 above.

60.   As the direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered general, special, incidental, and consequential damages, in an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel related expenses, past and future; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## VI. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

1) That the Court award Plaintiff judgment against Defendant for damages in an amount in excess of $75,000.

2) That the Court additional award all such other sums as shall be determined to fully and fairly compensate Plaintiff for all general, special, incidental and consequential damages incurred, or to be incurred, by Plaintiff as the direct and proximate result of the acts and omissions of Defendant;

3) That the Court award Plaintiff costs, disbursements, and reasonable attorneys' fees incurred;

4) That the Court award Plaintiff the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

5) That the Court award such other and further relief as it deems necessary and proper in the circumstances.

## VII. **JURY TRIAL DEMAND**

Plaintiff demands trial by jury on all issues raised herein.

Dated this 5th day of August, 2020.

                HOYT & BLEWETT PLLC

                By:   /s/ Drew Blewett
                      Alexander (Zander) Blewett III
                      Drew Blewett
                      P.O. Box 2807
                      Great Falls, MT 59401

Jory D. Lange, Jr., (*Pro Hac Vice pending*)
THE LANGE LAW FIRM, PLLC
6300 West Loop South, Suite 350
Houston, TX 77401

Attorneys for Plaintiff